**Margie Faye PRATER, Administratrix of the Estate of Orlando Byron Prater, Deceased, Appellant,**

v.

**Michael BURNS and Jennel Jackson Burns, Appellees.**

Court of Appeals of Tennessee, Western Section.

Jan. 21, 1975.

Certiorari Denied by Supreme Court July 21, 1975.

Warren Miller, Memphis, for appellant.

J. Harold Ellis, Memphis, Joe H. Walker, Jr., Ripley, for appellees.

MATHERNE, Judge.

This lawsuit grows out of a tragic incident, wherein a .410 gauge shotgun in the hands of thirteen-year-old Michael Burns discharged and killed fourteen-year-old Orlando Byron Prater. The administratrix sues Michael Burns, and his mother Jennel Jackson Burns for damages due to the wrongful death of her son Orlando Byron Prater.

The trial judge directed a verdict in favor of the defendant mother, and the jury found in favor of Michael Burns, the minor defendant. The plaintiff appeals on the following issues: (1) The trial judge erred in granting a directed verdict for the defendant mother; (2) There is no material evidence upon which to base the verdict in favor of the defendant Michael Burns; (3) The trial judge erred in certain charges given the jury.

The defendant Michael Burns and his brother David Burns, age fifteen years, were good friends with the deceased Byron Prater. These boys were together almost daily, walking in the woods, playing, and on a few occasions they hunted together. On October 25, 1972, when Michael Burns and his brother David arrived home from school, Michael called out to his mother that they were going hunting. The boys then each obtained his respective single shot .410 gauge shotgun, and ammunition. Michael states he loaded his shotgun in the house, he thinks he unloaded it when walking out the door, and he does not remember reloading the weapon. When the two Burns boys left the house and while they were in their yard, Byron Prater rode into the yard on his pony. There is no proof that Byron Prater had a shotgun, and apparently he was not going hunting with the Burns boys on this occasion. The three boys talked a few minutes, whereupon Michael Burns, with this .410 gauge shotgun being held in a position across both his shoulders and behind his neck, turned to go to the woods. When Michael Burns turned, the shotgun he was holding discharged and the load hit Byron Prater in the face, killing him instantly.

There is no explanation of what caused the shotgun to discharge. The proof shows it was in good condition, with no defects. No defect in the ammunition was proven. The weapon was a single barrel single shot .410 gauge shotgun with an outside pull back hammer.

The administratrix, mother of the deceased boy, testified the boys were close friends, and the families have remained friendly since the incident being considered. She stated her son Byron went to the Burns home on that occasion for the sole purpose of visiting with the Burns boys. Her son had on a few occasions hunted with the Burns boys.

The defendant Jennel Jackson Burns testified that she, her son Michael and five other children made up the household, her son David being the oldest child. This defendant stated Michael had owned the shotgun in question for about two months prior to the accident. This mother stated she had hunted with Michael; had shown him how to carry a shotgun, and had told him not to carry it across both his shoulders behind his neck. Mrs. Burns stated there were three shotguns in the home, hers, Michael's and David's. She stated she bought the ammunition for the weapons, and it was available to Michael and David. Mrs. Burns said she expected the boys to tell her when they were going hunting, but she had no objection to their hunting at any available time. She stated she was talking on the telephone when her boys came home from school on the day in question, and she did not hear Michael call to her that they were going

hunting. Mrs. Burns did not see the accident, and did not know at that time the Prater boy was in her yard.

Michael Burns stated he had hunted with the shotgun about twelve or thirteen times. He had been hunting considerably before obtaining the shotgun in question. Michael said he thought the shotgun was unloaded while he held it across his shoulders and behind his neck on the occasion when it discharged and killed Byron Prater. The evidence establishes there was no ill feeling between the boys. There is no proof of horseplay, pointing or waving of the shotguns during the few minutes the Burns boys talked with young Prater.

As to the defendant mother, Jennel Jackson Burns, the plaintiff alleges her negligence was the direct and proximate cause of the death of Byron Prater wherein she allowed her minor son to have and use a shotgun; failed to properly instruct her son in the use of a shotgun; and failed to supervise her son when he used the shotgun.

The plaintiff charged Michael Burns with negligence wherein he handled a shotgun in a careless and negligent manner; failed to check the shotgun to see if it was loaded; in placing the shotgun on his shoulders behind his neck; and in pointing the shotgun at Byron Prater, all of which constituted the direct and proximate cause of the death of Byron Prater.

The defendants denied all acts of negligence and averred the deceased Byron Prater "was a social guest at the home of the defendants and that his death was the result of a freakish accident and not due to any negligence on the part of these defendants."

■ The trial judge directed a verdict for the defendant Mrs. Burns on the ground the deceased child was a social guest on the premises of that defendant. The corresponding duty or degree of care thus imposed by the trial judge upon the defendant Mrs. Burns is that which she owed to a licensee, which is no duty except to refrain from willfully injuring the person or from committing negligence so gross as to amount to willfulness, or from leading him into a trap. *Walker v. Williams* (1964) 215 Tenn. 195, 384 S.W.2d 447; *Hall v. Duke* (Tenn.1974) 513 S.W.2d 776.

In the case of *Smith v. Salvaggio* (1914) 4 Tenn.Civ.App. (Hig.) 727, the Court in discussing the liability of a parent who permits his or her minor child to have possession of a deadly weapon, stated the rule:

"  .  .  . the parent is chargeable with negligence in such cases, if, from all the facts and circumstances, he should have known of the probable danger and injury that might result to others from permitting the child to have the weapon in his possession (citations).

"The rule for such liability upon the part of the parent is not founded upon the relation of parent, but upon the ground of the negligence of the parent in permitting the child to have possession of the dangerous and deadly weapon, when, from • is youth and inexperience, it might be reasonably anticipated, that in the use of such weapon the child would inflict injury upon others."

■ We adopt the rule stated in *Smith* and we hold the duty owing by the defendant Mrs. Burns to the deceased Byron Prater was to not entrust the possession of the .410 gauge shotgun in her minor son Michael Burns, if it might be reasonably anticipated that due to his youth and inexperience he would inflict injury upon others in the use of the weapon.

There is respectable authority for the proposition that under certain circumstances a parent is entitled to a directed verdict in a lawsuit charging the parent with the negligent entrustment of a firearm in a minor child who injures another in the use thereof. These cases seem to hold the parent free of liability as a matter of law where the facts disclose the minor was thoroughly familiar with the use of firearms and had a history of considerable experi-

ence in handling same. See and compare: *Herndobler v. Rippen* (1915) 75 Or. 22, 146 P. 140; *Klop v. Vanden Bos* (1933) 263 Mich. 27, 248 N.W. 538; *Palm v. Ivorson* (1905) 117 Ill.App. 535, as cited at 68 A.L. R.2d 791.

■ In this respect we note the Court in *Smith v. Salvaggio, supra,* stated "The question of the parent's negligence in such cases is always for the jury." Without belaboring the import of the words, "always for the jury," we realize the issues of negligence and contributory negligence are normally for the jury. More importantly, however, the facts of this lawsuit made the negligence of Mrs. Burns an issue for the jury. Even though Michael Burns had some experience in hunting and Mrs. Burns had trained him in the handling of firearms, the record reveals Michael Burns was so inexperienced, untrained and irresponsible as to not know the shotgun was loaded. From the testimony of Michael Burns describing his action of loading the shotgun in the house, thinking he had unloaded, not remembering whether he reloaded, material evidence was before the jury upon which Mrs. Burns could be found negligent in the entrustment of the shotgun in Michael because of his exhibited total incompetence on the occasion of the injury. The jury could find that due to Michael's incompetence, Mrs. Burns might have reasonably anticipated injury would result to others by his use of the shotgun.

■ We hold the trial judge erred in directing a verdict for the defendant Mrs. Burns, and the plaintiff is granted a new trial as to that defendant. The parent's liability is not based upon the alleged negligent act of the minor in the use of the weapon. The parent's liability rests alone upon whether there was a negligent entrustment of the weapon to the minor. Where there is a negligent entrustment of a weapon to a minor, the subsequent discharge of the weapon by the minor which injures another is not such an independent intervening act as will break the chain of causation between the parent's negligence and the injury which occurred.

■ We would further note, however, there may arise many situations wherein a minor negligently used a firearm which resulted in injury to another, yet the parent would not necessarily be negligent in permitting the minor to use the weapon. In this regard we hold the proof of the minor's acts, demeanor and conduct at the time of the injury to another is material evidence on the minor's experience, training and judgment in the use of the firearm, and is therefore admissible on the issue of the parent's negligence in permitting the minor to use the weapon. It thus appears most of these lawsuits will present a jury question on the issue of the negligence of the party who permitted the minor to use the weapon.

■ Considering the position of the minor Michael Burns we have a jury verdict, approved by the trial judge, finding him free of negligence. If there is any material evidence to sustain the verdict it must be approved by this Court, unless the record reveals other reversible error. *Wilburn v. Vernon* (1969) 60 Tenn.App. 436, 447 S.W.2d 382.

■ If a person is injured as result of the discharge of a firearm by another, the test of liability is not whether the injury was accidentally or unintentionally inflicted, but whether the defendant is free of negligence, or that the injury was unavoidable. *Tally v. Ayres* (1856) 35 Tenn. 677; *Knott v. Wagner* (1886) 84 Tenn. 481, 1 S.W. 155; 94 C.J.S. Weapons § 28, p. 525.

The main thrust of the plaintiff's appeal as relates to the liability of young Burns is that the thirteen-year-old minor should, as a matter of law, be held to adult standards when he is using a dangerous weapon, and the trial judge erred in not so holding; and the Judge erred in his charge to the jury as to the standard of care to be imposed upon the minor defendant. The plaintiff insists the situation is comparable to that of a

minor driving an automobile wherein he is held to the same degree of care as an adult. *Powell v. Hartford Accid. & Indem. Co.* (1966) 217 Tenn. 503, 398 S.W.2d 727.

In the *Powell* case the Court found the defendant minor, age 14 years, was issued a special restricted license, or permit under T.C.A. § 59–704(g) to operate a motor driven cycle. When the license was so obtained the minor demonstrated his "ability to exercise ordinary and reasonable control" of the motor driven cycle as required by Section 59–704(g); and, he also took an examination including "a test of the applicant's eyesight, his ability to read and understand highway signs regulating, warning, and directing traffic, his knowledge of the traffic laws of this state, and shall include an actual demonstration of ability to exercise ordinary and reasonable control in the operation of a motor vehicle," as required by T.C.A. § 59–707. The minor also had to produce positive proof of his age. We also note certain persons are not eligible for a license to operate a motor vehicle, T.C.A. § 59–705. The Court thus very properly held all persons who operate motor vehicles on the public highways of Tennessee are under the same duty of care.

Looking to the statutes governing the possession and use of a gun for hunting we find a very different situation. In Tennessee children under the age of 16 years are required to pay $3.00 for a resident's hunting license, T.C.A. § 51–202 and 51–203. Under T.C.A. § 51–207, the owners and tenants of farm lands, *and their dependent children*, may hunt on their lands, or the lands under their control with the permission of the owner, without a hunting license. There is no statutory requirement that a person display any degree of skill, judgment, knowledge or experience in the use of firearms, or be of a certain age, in order to obtain a hunting license. We also note a minor under the age of 16 years is not required to have a federal migratory waterfowl stamp while hunting that type game, T.C.A. § 51–201; a similar exemption being recognized by the federal govern-ment, 16 U.S.C.A., Migratory Birds, § 718, p. 467.

We note another legislative declaration on the subject in the Criminal Code of this state, wherein it is a crime to sell, loan or give to any minor a pistol, bowie knife, dirk, hunter's knife, or like dangerous weapon, *except a gun for hunting*, T.C.A. § 39–4905.

We conclude the established public policy of this state is that a child of any age may possess, own, use and employ a gun for hunting [subject to laws governing license, seasons, bag limits, etc.] without meeting any requirement as to age, ability, experience, knowledge or judgment in the use of the weapon. Our statutes on the subject basically adhere to the accepted custom of an earlier day, when a child of sufficient size and strength to hold and aim a hunting weapon, not only usually did so in the pursuit of game, but normally was expected to do so. We hold the .410 gauge shotgun in question was, under the facts, possessed by Michael burns as a "gun for hunting." We therefore conclude the ruling in *Powell* is not applicable to the present lawsuit, and Michael Burns is not, as a matter of law, to be held to adult standards of care in his use of the weapon.

Regardless of the lawfulness of the possession and use of the weapon by Michael Burns, the gist of this lawsuit against him is his failure to exercise such ordinary care as, under the circumstances, he should have exercised so as to avoid the injury. This brings into focus the standard of care expected of thirteen-year-old Michael Burns.

In this regard the trial judge charged the jury:

"This suit is based on negligence which may be defined as a failure to use ordinary care; that is, that degree of care and prudence that an ordinary prudent person would use under like conditions and circumstances. Now, gentlemen, in this case you have to consider the fact that you are dealing with a young man here—

"Gentlemen, I don't want to be incorrect. I believe it was fourteen at the time of this accident?

"MR. ELLIS: Thirteen.

"THE COURT: Thirteen at the time of this accident. Consider what a young man might do under those circumstances at that time; how he would act. That is what you've got to consider in this case."

After some deliberation, the jury returned into the courtroom and the following transpired:

"THE COURT: Gentlemen of the Jury, I understand you have a question for the Court, something you didn't understand or something.

"THE FOREMAN: Your Honor, we seem to have a difference of opinion in there as to just exactly what we're voting on. Some say we're voting the negligence of the boy itself of—The way we understood—Some of us understood you to charge us that—Are we voting on did he do anything that any other normal 13-year-old boy would have done in the same situation?

"Could you go over the—What constitutes negligence in the Court's—because we're supposed to decide that and we can't do it. That's the facts. Do you understand?

"THE COURT: Yes, sir.

"Gentlemen, before you can find for the plaintiff in this case you must first find that there is negligence on the part of the defendant. Now, in considering the question of negligence I'll charge you, or recharge you, on this question of negligence.

"This suit is based on negligence which may be defined as a failure to use ordinary care; that is, that degree of care and prudence that an ordinary prudent person would use under like conditions and circumstances. By that I mean what would a young man thirteen or fourteen years old do? What would be his actions? You're going to have to consider whether he was negligent as a thirteen- or fourteen-year-old minor in his actions out there that day."

The presumption is that a child between the ages of seven and fourteen years is incapable of negligence, but the presumption is not conclusive and may be rebutted by evidence of his capacity for negligence. *Bailey v. Williams* (1960) 48 Tenn.App. 320, 346 S.W.2d 285, and the authorities therein cited. This question is normally one of fact for the jury. *Bailey v. Williams, supra.*

The question therefore is reduced to the minor's capacity for negligence. In other words is the minor, in the light of the circumstances by which he injured another, of such age, ability, intelligence, training and experience that he is capable of being negligent in his acts or failure to act in that particular circumstance out of which the other party was injured.

The charge as given by the trial judge mentioned only the age of the defendant Michael Burns as a factor to be considered by the jury in passing on his capacity for negligence under the circumstances. What "a young man might do under those circumstances at that time; how he would act," as originally charged; and "By that I mean what would a young man thirteen or fourteen years old do? What would be his actions?" as later charged in answer to an inquiry by the jury on the subject, do not properly state the law, and do not properly define to the jury the factors to consider in determining if Michael Burns, under the circumstances, is to be held capable of negligence. We would here note, as did then Presiding Judge McAmis in the *Bailey* case, *supra*, the charge as given by the trial judge in that lawsuit fully and correctly sets forth the law on this subject.

There was evidence of the grades Michael Burns made in school, his experience in hunting, the training his mother had given him in the handling of firearms, as well as his acts and failure to act on the occasion of the death of young Prater. It is

of paramount importance that the jury be correctly charged on the issue of young Burns capacity for negligence. The failure to so charge is reversible error.

It results the judgment of the trial court is reversed and this lawsuit is remanded for a new trial. The cost of this appeal is adjudged against the defendant-appellees, the costs in the trial court to be there adjudged on the new trial.

The Honorable W. E. Quick, by appointment of the Chief Justice of the Supreme Court of Tennessee, sat on this lawsuit in the place of Presiding Judge C. S. Carney.

NEARN, J., and QUICK, Special Judge, concur.