**William H. FLY and Janet D. Fly, as natural Parents and Next Friends of David H. Fly, Deceased, Plaintiffs–Appellants,**

**v.**

**Michael Joseph CANNON, Helen Butts, Wesley Harville, and James B. Simonton and Vickie B. Simonton d/b/a Guns and Ammo, a partnership, Defendants–Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 11, 1992.

Application for Permission to Appeal Denied by Supreme Court May 11, 1992.

Petition to Rehear Denied June 15, 1992.

R. Sadler Bailey, Memphis, for plaintiffs-appellants.

William J. Jeter, Lucinda S. Murray, Robert A. Cox, Memphis, for defendants-appellees, James B. and Vickie B. Simonton, d/b/a Guns and Ammo, a Partnership.

CRAWFORD, Judge.

Plaintiffs appeal from the order of the trial court granting summary judgment to defendants, James B. Simonton and Vickie B. Simonton, d/b/a Guns and Ammo, a partnership, which was made final pursuant to Rule 54.02, Tenn.R.Civ.P.

We previously considered plaintiffs' appeal from a similar order granting summary judgment to defendant Helen E. Butts—*Fly v. Cannon*, 813 S.W.2d 458 (Tenn.App.1991)—and the factual background is set out in that opinion, which we quote:

> The material facts are virtually undisputed. Plaintiffs are the parents of David Fly, who was killed on October 20, 1989, when he was shot with a .44 magnum handgun by defendant, Michael Joseph Cannon. Defendant Butts is the grandmother of Cannon and the deceased. The boys were first cousins and best friends. Cannon's parents were killed in an automobile accident when he was approximately three years of age and defendant Butts became his court appointed legal guardian. Ms. Butts provided a home for Cannon and his older sister. Cannon became 18 years of age on June 14, 1989, approximately four months prior to the October 20th incident resulting in the death of Fly. When Cannon became 18 years of age, the legal guardianship was terminated and all guardianship assets were transferred to Cannon. For a short time after Cannon reached the age of 18, he continued to live in a wing of Ms. Butts' house, somewhat separate from the main part of the house.
>
> From an early age, Cannon had been interested in guns and hunting and had taken a hunter's safety course when he was in sixth grade. In addition to the .44 magnum involved in this lawsuit, he owned a 12 gauge Browning shotgun, a 12 gauge Marlon goose gun, a Winchester 22 rifle, a muzzle loader, a Savage 270 deer rifle, a Baretta 9 millimeter pistol and a Swedish Mouser rifle. He also owned a bullet making machine.
>
> Most of the guns Cannon owned were inherited from his father. Two of his guns were purchased by Ms. Butts with Cannon's funds while she was his guardian. She first purchased a deer rifle and then later, when Cannon was about sixteen years of age she purchased the .44 magnum which he also wanted for deer hunting. Cannon first attempted to purchase the .44 magnum himself but because of his age was unable to do so. He asked his grandmother to buy it for him which she did. Cannon used the gun for deer hunting approximately two years prior to the incident of October 20, 1989. On that date, Cannon purchased ammunition for the gun and had gone to Potts Camp, Mississippi to "sight in" the gun for deer season.
>
> On the night of October 20, Cannon was in his bedroom and heard a noise outside near the sliding glass door going to the back yard. He was startled and frightened. He grabbed the loaded .44 magnum and went to the sliding glass door. He pulled the curtain back and saw the figure of a person which he thought was preparing to break into the house and he

fired a shot through the glass door. The bullet struck and killed the decedent. The defendant, Ms. Butts, was in the other part of the house at the time of this incident and had no knowledge of any of the details until after the shooting.

Plaintiffs filed suit for the wrongful death of their son and named as defendants, Cannon; Butts; Leslie Harville, the seller of the .44 magnum; and James B. and Vickie B. Simonton, d/b/a Guns & Ammo, partnership, the seller of the ammunition.

813 S.W.2d at 459–460.

Plaintiffs allege as to these defendants that they failed to exercise reasonable care in selling ammunition for the handgun to the defendant Cannon without making proper inquiry concerning his age and that they were guilty of negligence per se in violating the provisions of 18 U.S.C. § 922(b)(1) which provides:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.

It is undisputed that Cannon purchased ammunition for the forty-four magnum pistol from defendants on October 20, 1989, and that at that time Cannon was under the age of 21 years. It is also undisputed that defendants did not make any inquiry concerning Cannon's age.

The only issue on appeal is whether the trial court erred in granting summary judgment to these defendants. Summary judgment is to be rendered by a trial court only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03 (1984).

In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee,* 692 S.W.2d 420 (Tenn.App.1985); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.App.1983).

Plaintiffs assert that the defendants' violation of 18 U.S.C. § 922 was negligence per se and that whether the negligence was a proximate cause of plaintiffs' loss is a question of fact for the jury. Plaintiffs rely upon several cases from other jurisdictions which we will briefly discuss.

In *Franco v. Bunyard,* 261 Ark. 144, 547 S.W.2d 91 (1977), an action was brought for wrongful death against a retail store for selling a pistol, in violation of the federal statute, to an escaped convict who used the pistol to murder two men and wound another. The trial court granted summary judgment and the Arkansas Supreme Court reversed. The Court noted that the violation of the statute is evidence of negligence and the issue of proximate cause is generally a question of fact for the jury. The Court said:

... The tragedies could not have occurred as they did if the federal rules had been obeyed.... He [the escaped convict] could not have obtained possession of the gun and could have not used it to shoot innocent men the next day.

547 S.W.2d at 93.

In *Rubin v. Johnson,* 550 N.E.2d 324 (Ind.App. 1 Dist.1990), the administrator of an estate sued a handgun seller for the alleged negligent sale of a handgun to a mentally incompetent buyer who shot plaintiff's decedent. Defendant-seller was granted an interlocutory appeal from the order of the trial court denying his motion

for summary judgment. Plaintiff's cause of action was based primarily on an Indiana code section prohibiting the sale of firearms to convicted felons, drug abusers, alcohol abusers or persons of unsound mind. The sale in this instance was made to a mentally incompetent person who later fatally shot plaintiff's decedent. The court noted that the Indiana statute was enacted "to protect the public from those who would use such weapons in a dangerous or irresponsible manner." *Id.* at 329. The court affirmed the denial of summary judgment by the trial court and held that whether a statute has been violated and whether the violation thereof is the proximate cause of an injury are questions for the trier of fact.

In *Hetherton v. Sears, Roebuck & Co.,* 593 F.2d 526 (3rd Cir.1979), an off-duty policeman acting as a security guard was injured after being shot by a convicted felon who had purchased a rifle from defendant. A Delaware statute prohibited the sale of a firearm to a convicted felon. In the plaintiff's suit against Sears, the district court granted summary judgment. The appellate court reversed and noted that the statute was enacted for the safety of the public and that the legislature intended to protect innocent persons. The Court held that Sears had violated the statute and that the proximate cause of plaintiff's injury was for the trier of fact.

In *Decker v. Gibson Products Co. of Albany, Inc.,* 679 F.2d 212 (11th Cir.1982), plaintiff in a diversity action sued the seller of a handgun who violated the federal gun control act. The district court granted summary judgment. The Circuit Court of Appeals reversed and held under Georgia law that the proximate cause of the injury was for the jury.

In *K–Mart Enterprises of Florida, Inc. v. Keller,* 439 So.2d 283 (Fla.App.1983), a police officer who was shot sued the retail seller of a firearm for the sale of the firearm in violation of 18 U.S.C. § 922. The jury returned a verdict for the plaintiff. The sale was made to a person who was subject to a felony information and was also a drug user, which was clearly a violation of the act. The purchaser "lent" his brother the rifle and ammunition. His brother was an alcoholic and also a drug addict and went on a rampage—taking hostages, etc.—which ultimately ended in the shooting of plaintiff. Affirming the judgment on the jury verdict, the Court said:

> ... [W]e conclude that the jury could properly have found the shooting of Keller was the type of harm, or "within the risk" designed to be prevented by the Gun Control Act—the misuse of a firearm by an irresponsible purchaser so that K–Mart's non-adherence to that statute constitutes a legal cause of plaintiff's injuries.

439 So.2d at 286.

We find each of plaintiffs' cited cases to be persuasive only as to the facts of each particular case. We feel the cases are distinguishable on their facts from the case at bar. In the case at bar, Cannon was widely experienced in the use of guns. He had taken a hunter's safety course when he was in the 6th grade. He was known to be careful and responsible in the maintenance and use of firearms and, in addition to the .44 magnum involved in the incident which precipitated the lawsuit, he owned "a 12 gauge Browning shotgun, a 12 gauge Marlin goose gun, a Winchester 22 rifle, a muzzle loader, a Savage 270 deer rifle, a Barretta 9 millimeter pistol and a Swedish Mizer rifle. He also owned a "bullet making machine." 813 S.W.2d 459.

In the cases cited by plaintiffs, firearm sales were made to convicted felons, mentally incompetent persons and drug users, all of whom the trier of fact could have found would not have obtained the firearms if they had not been illegally sold by the defendants. By contrast, Cannon had access to any number of firearms and ammunition exclusive of the particular ammunition that he purchased from the defendants.

Defendants argued in the trial court and assert in this Court that this case is controlled by *Ward v. University of the South,* 209 Tenn. 412, 354 S.W.2d 246 (1962), which was a wrongful death suit resulting from the negligent firing of a

pistol. Plaintiff sued, among others, the seller of the firearm to the negligent party who was a minor at the time of the sale. Plaintiffs alleged, among other things, that the seller violated T.C.A. § 39–4905 which prohibited the sale of certain weapons to minors. The trial court sustained demurrers to the declaration and, as to the seller of the pistol, found that the pistol buyer's negligence was an independent intervening cause. Affirming the trial court, our Supreme Court said:

The test of liability under the law of intervening cause requires a person to anticipate or foresee what usually will happen. It does not require him to anticipate and provide against what is unusual or unlikely to happen, or that which is remotely possible, but whether it was probable according to the usual experience of persons. *Moody v. Gulf Refining Company*, 142 Tenn. 280, 218 S.W. 817, 8 A.L.R. 1243; *Moyers v. Ogle*, 24 Tenn.App. 682, 148 S.W.2d 637; *Ford Motor Co. v. Wagoner*, 183 Tenn. 392, 192 S.W.2d 840, 852, 164 A.L.R. 364; *Rader v. Nashville Gas Co.*, 37 Tenn. App. 621, 268 S.W.2d 114; 65 C.J.S. Negligence § 111, pp. 685, 699, 700.

In *Moody v. Gulf Refining Company*, supra, the Court said:

"An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury."

Applying the foregoing rule to the facts alleged in the declaration and allowing every intendment in their favor, as we are required to do in testing the declaration by demurrer, we think that the mere possibility of either defendant foreseeing or anticipating the tragic consequences of Sawyer's acts was so remote, unreasonable and improbable as to leave no room for speculation.

Finally, conceding that Baker was guilty of negligence per se in selling the pistol to Sawyer in violation of the provisions of T.C.A. § 39–4905, prohibiting the sale of certain weapons to minors, the unlawful sale created only a condition from which no harm was reasonably foreseeable or could have resulted had it not been for the subsequent, unrelated, unforeseeable, intervening acts of Sawyer, who, at the age of 19 and a sophomore at the University, was capable of comprehending the full import and consequences of his deed.

The rule is well settled that where two distinct causes, unrelated in operation, contribute to an injury, one of them being a direct cause and the other furnishing the condition by which the injury was made possible, the former alone is responsible for the result. (Citations omitted.)

354 S.W.2d at 250–251.

In *Hames v. State of Tennessee*, 808 S.W.2d 41 (Tenn.1991), our Supreme Court reaffirmed the principle enunciated in *Ward*. Suit was filed against the State of Tennessee pursuant to the Tennessee Claims Commission Act for the death of plaintiff's decedent who was struck by lightning on a state golf course. Plaintiff contended that "... the death was the result of the State's negligence in failing to erect lightning proof shelters or maintaining a warning system to vacate the golf course during electrical storms." 808 S.W.2d at 43. The State argued that the cause of the death was an act of God and not the State's action or inaction as the owner and operator of the golf course. In reversing an award to plaintiff of $300,-000.00 made by the Court of Appeals, the Supreme Court said:

... As to proximate causation, it appears that the proximate cause of the death was the bolt of lightning, as opposed to anything that the State may or may not have done. While the argument can be made that the absence of lightning proof shelters and warning devices was to some extent responsible for the death, the rule is that where two distinct causes, unrelated in operation, one of them being the "direct cause" and the

other furnishing the condition by which the injury was made possible, the former alone is to be regarded as the proximate cause of the result. *Ward v. University of the South,* 209 Tenn. 412, 354 S.W.2d 246, 251 (1962). Even assuming that the failure to provide shelters or utilize warning devices was negligence, such failure merely furnished the condition by which lightning could strike the decedent.

808 S.W.2d at 45.

The facts in the instant case are closely analogous to the facts of the *Ward* case. In *Ward,* a firearm was sold in violation of a statute, and in the instant case, ammunition was sold in violation of a statute. In both cases, the instruments of death were the illegally sold articles. The *Ward* case and the instant case are practically indistinguishable on their facts. Plaintiffs, in effect, ask this Court to overrule *Ward,* but it is not the province of this Court to overrule the Supreme Court. We are bound by the doctrine of *stare decisis;* if *Ward* is to be overruled, the Supreme Court must do it. Under the uncontroverted facts in the instant case, defendant's sale of the ammunition to Cannon, at most, created a condition by which the unfortunate incident was made possible. The direct and proximate cause of the incident was the action of Cannon in firing a gun at a supposed intruder.

The order of the trial court is affirmed and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants.

TOMLIN, P.J. (W.S.) and HIGHERS, J., concur.