**Claire Smith BROWN, as Administratrix of the Estate of Jonathan Lee Stone, Deceased, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

No. 96–2897–D.

United States District Court,
W.D. Tennessee,
Western Division.

June 9, 1997.

James F. Schaeffer, Sr., Schaeffer Law Firm, Eads, TN, for Plaintiff.

William I. Luckett, Jr., Rossie Luckett Parker and Laughlin, Memphis, TN, for Defendant.

**ORDER DENYING SUMMARY JUDGMENT**

DONALD, District Judge.

Defendant Wal–Mart Stores, Inc., has moved for summary judgment, arguing under Rule 56(c) that it cannot be held liable for selling bullets to an 18–year–old who shot and killed Plaintiff's son with those same bullets. Plaintiff, the duly appointed administratrix of the deceased's estate, has sued under common law negligence and under a negligence per se theory based on the charge that a Wal–Mart employee sold the ammunition in violation of a provision of the 1968 Gun Control Act, 18 U.S.C. § 922(b) (1994).

Defendant argues the sale was not the proximate cause of Jonathan Stone's death because the action of Mr. Stone's assailant, Christopher Cavnor, constituted a superseding and intervening cause of Mr. Stone's death that absolves Wal–Mart of liability. Defendant also argues that the sale of the .357 Magnum shells did not violate the Gun Control Act because the ammunition is usable in a rifle and therefore may be sold to persons who are at least 18 years old. With respect to Plaintiff's common law cause of action, Defendant argues it had no legal duty via its employee to protect Mr. Stone from third persons, for example, by adhering to the company's internal policy not to sell any type of ammunition to persons under 21, by determining whether Mr. Cavnor intended to use the ammunition in a handgun or by anticipating his lethal misuse of that purchase.[1]

I. BACKGROUND

According to the complaint, on December 16, 1995, 18–year–old Christopher Cavnor purchased .357 Magnum ammunition from Defendant's retail store located at 1280 South Germantown Road in Germantown, Tennessee. At the time of the purchase, a sign posted in the store's sporting goods department stated that, "Federal Law pro-

---

1. The amended complaint also claims Defendant breached a duty not to sell ammunition for an "inherently dangerous instrument" to a minor who may have been inexperienced in the safe handling of the instrument and that it failed to adequately train its employees to exercise reasonable care in selling munition to minors. (Am. Compl. at 3–4.)

hibits the sale of ammunition for handguns and rifles to anyone under the age of 21." (Am.Compl.¶ 4.) As discussed later, this is not a wholly accurate statement of the law, but Plaintiff claims it is Wal–Mart's policy to not sell any type of ammunition to customers who are less than 21. The complaint alleges that the clerk did not ask Mr. Cavnor how old he was, but that Mr. Cavnor showed the clerk identification when he paid with a personal check. (*Id.*) After returning home, Mr. Cavnor "confronted" his neighbor Jonathan Stone in his driveway and, in the strange wording of the complaint, "lacking sufficient experience not to do so, pointed the handgun toward the body of the decedent and pulled the trigger.... " Mr. Stone was struck in the heart and died immediately. (*Id.*) In a blanket denial, Wal–Mart refutes this entire account. (Answer to Am. Compl. ¶ 4.)

## II. SUMMARY JUDGMENT

■ Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court also may consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2721, at 40, § 2722, at 56 (2d ed.1983). The evidence and inferences based on facts must be viewed in a light most favorable to the nonmoving party, in this case the plaintiff. *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

■ Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party can meet its initial burden of proving that no material facts exist by showing there is a lack of evidence to support the nonmoving party's case, *id.* at 325, 106 S.Ct. at 2554, which it can do by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 35 (2d ed. Supp.1996). The moving party need not present affidavits or new evidence of its own to meet the initial burden but may base its motion on an attack of the opponent's evidence. *Id.*

Once a properly-supported motion for summary judgment is made, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," Fed.R.Civ.P. 56(e), but must—by affidavits or other evidence— "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Significantly, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

### A. Negligence Per Se

■ Plaintiff bases its negligence per se cause of action on Wal–Mart's alleged failure to comply with the Gun Control Act, which prohibits any licensed dealer, including retailers, from selling or otherwise providing ammunition

> to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the ... ammunition is other than ... for a shotgun or rifle, to any individual who the licensee

knows or has reasonable cause to believe is less than twenty-one years of age;

18 U.S.C. § 922(b)(1). The statute thus distinguishes between handgun ammunition, which may not be sold to those under 21, and longarm ammunition (rifles and shotguns), which may be sold to customers as young as 18. *See Fly v. Cannon,* 836 S.W.2d 570, 572 (Tenn.Ct.App.1992).

Congress' awkward wording raises a legal issue that Defendant asks the court to decide in its favor: does 18 U.S.C. § 922(b)'s ban on selling ammunition for weapons "other than" shotguns or rifles to persons under 21 allow merchants to sell ammunition suitable for *both* handguns and longarms to persons as young as 18? In its motion for summary judgment, Wal–Mart cites to an Arizona jurisdiction that applied a variation of a plain meaning analysis in interpreting § 922(b) to allow interchangeable ammunition sales to anyone aged 18 years or older:

> Interchangeable ammunition, because it is usable in a shotgun or rifle, cannot be ammunition other than that for use in a shotgun or rifle. If Congress had intended to prohibit the sale of all ammunition usable in handguns, regardless of its suitability for long guns, Congress could have so stated. The statutory language thus indicates that Congress intended to allow persons over the age of eighteen access to ammunition usable in rifles or shotguns, even if the ammunition also is usable in handguns.

*Bell v. Smitty's Super Valu, Inc.,* 183 Ariz. 66, 900 P.2d 15, 17 (App.1995) (citation omitted). Similarly, in *Phillips v. K–Mart Corp.,* 588 So.2d 142 (La.Ct.App.1991), the court held that a store clerk did not violate § 922(b) by selling .357 Magnum ammunition to a 19–year old who told the clerk that he intended to use the ammunition in his rifle. Even though the teenager later shot and killed someone with a handgun loaded with the ammunition, the court found the statute had not been violated because the store clerk "testified that [the buyer] indicated that he was purchasing the bullets in order to do some target practicing or hunting with his rifle." *Id.* at 144.

While the Arizona case provides a bright line rule, *Phillips* is consonant with an interpretation provided by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), which promulgates rules to enforce the Gun Control Act. *See* 27 C.F.R. § 178.1(a) (1996). ATF stated in a publication that a licensee may sell interchangeable ammunition to a person less than 21 years old "provided the buyer is 18 years or older, and the dealer is satisfied that it is for use in a rifle." If the ammunition is "intended" for use in a handgun, the buyer must be at least 21 years old. Bureau of Alcohol, Tobacco and Firearms, *Federal Firearms Regulations Reference Guide* 107 (1995).

The *Phillips* case and ATF's interpretation do not provide Defendant automatic cover because a material issue of fact exists as to whether Wal–Mart's clerk made a sufficient inquiry to determine Mr. Cavnor's age and the type of weapon he intended to use with his new bullets. Accordingly, Plaintiff could eventually prove duty and breach by establishing that Defendant violated § 922(b). *See Berry v. Whitworth,* 576 S.W.2d 351, 353 (Tenn.Ct.App.1978) (noting the "well settled" proposition of law that failure to perform a statutory duty is negligence per se and that liability attaches if the resulting injury is the proximate result or consequence of the negligent act); *Coker v. Wal–Mart Stores, Inc.,* 642 So.2d 774, 779 n. 3 (Fla.Dist.Ct.App.1994) ("[W]e fundamentally disagree with any suggestion ... that a violation of the Gun Control Act cannot amount to negligence per se or, as a matter of law, cannot be said to result foreseeably in criminal conduct.").

### B. Common Law Negligence

In Tennessee, the plaintiff must establish all of the following elements to prove a negligence claim: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993). Because the court finds that Defendant could be held liable for its acts as a matter of law, Plaintiff's common law negligence claims do

not stumble at the duty hurdle on summary judgment.

■ Defendant claims (without authority) that it owed Plaintiff no legally-recognized duty related to the sale of the ammunition. Tennessee cases indicate that Wal–Mart did owe a duty to Mr. Stone, as the corporation does to many third persons. It is well-settled that, "[i]f a person is injured as result of the discharge of a firearm by another, the test of liability is not whether the injury was accidentally or unintentionally inflicted, but whether the defendant is free of negligence, or that the injury was unavoidable." *Prater v. Burns*, 525 S.W.2d 846, 850 (Tenn.Ct.App. 1975). Among the authorities cited in *Prater* is *Corpus Juris Secundum*, which specifically recognizes the legal duty inuring to a third party injured as a result of the negligence of a gun seller:

> A person who, in lawfully disposing of a weapon to another, is chargeable with a negligent act or omission which is the proximate cause of an injury that is the natural and probable consequence of the negligence, is liable therfor[e], subject to the rules of law applicable to negligence and contributory negligence.

94 C.J.S. *Weapons* § 31, at 531 (1956). This duty is no more than an extension of the familiar principle that tort liability is premised on the defendant's fault "in neglecting to exercise such a reasonable degree of skill, or diligence, or caution, and prudent foresight, as, under the circumstances, might have avoided the injury." *Tally v. Ayres*, 35 Tenn. (3 Sneed) 677, 680 (1856) (affirming a lower court judgment finding a defendant who accidentally killed a horse when his gun discharged liable to the owner); *see also* *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct.App.1990) ("A duty rests on everyone to use due care under the attendant circumstances, and negligence is doing what a reasonable and prudent person would not do under the given circumstances. ").

■ Ordinarily, one does not have a duty to act affirmatively to protect people from conduct other than one's own. However, "certain socially recognized relations [may] constitute the basis for such legal duty," including when the actor/defendant had control over a third party's use of an item, such as a weapon, that could create an unreasonable risk of harm to others. *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn.Ct. App.1992). This duty arises if the defendant knows or has good reason to believe that the third person intends to misuse the item. *Restatement (Second) of Torts* § 308 cmt. b (1964). A breach of this duty gives rise to a tort action known as "negligent entrustment":

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Restatement, supra,* § 390; *see Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 (Tenn.1996). Among those who may be liable as "suppliers" are sellers of chattels.[2]

---

**2.** The rule in *Brown v. Harkleroad*, 39 Tenn.App. 657, 287 S.W.2d 92 (1956), limiting negligent entrustment suits to situations involving some sort of bailment, has been fiercely criticized. In *Nichols v. Atnip*, 844 S.W.2d 655 (Tenn.Ct.App. 1992), the court noted that *Harkleroad* is contrary to § 390 of the *Restatement (Second) of Torts* and has been criticized by many courts and legal scholars, including Professor Keeton, who stated that "[s]uch decisions ... look definitely wrong." *Id.* at 660 (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 104, at 718 (5th ed.1984)).

The court in *Nichols* also cited with approval a California case holding that "it is firmly established that all persons in the chain of causation may, under appropriate circumstances, be liable to an injured party." *Talbott v. Csakany*, 199 Cal.App.3d 700, 705, 245 Cal.Rptr. 136 (Cal.Ct. App.1988). At the time *Talbott* was decided, California courts for years had recognized that merchants are "suppliers" within the meaning of § 390. *See e.g., Johnson v. Casetta*, 197 Cal. App.2d 272, 273–74, 17 Cal.Rptr. 81 (Cal.Ct.App. 1961) (seller of car could be liable to third party injured by purchaser when seller knew purchaser was not competent to operate the vehicle). As Professor Keeton noted, "[i]t is the negligent entrusting which creates the unreasonable risk; and this is none the less when the goods are

Most of the new causes of action in the amended complaint track the negligent entrustment tort, including Plaintiff's claims that Defendant sold ammunition "for an inherently dangerous instrument" to one "who may have been inexperienced," failed to "reasonably anticipate" that the minor could injure or kill another through misuse of that ammunition, and failed to "comply with its duty to exercise ordinary care" in selling the .357 Magnum bullets to Mr. Cavnor. These are not separate duties but merely different ways of expressing the merchant's duty, under certain circumstances, to guard against misuse of the products it sells. For example, in *Fly* the court referred specifically to a duty on the part of a merchant to inquire about a purchaser's age. *Fly*, 836 S.W.2d at 572.

■ Plaintiff also claimed in her amended complaint that Defendant failed to adequately train its employees. Tennessee courts recognize this tort, which is based on the *Restatement of Agency:*

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders [or] in failing to make proper regulations; or
>
> . . .
>
> (c) in the supervision of the activity; . . .

*Restatement (Second) of Agency* § 213 (1958); *Gates v. McQuiddy Office Prods.,* 1995 WL 650128, at *1 (Tenn.Ct.App. Nov.2, 1995); *see also* 27 Am.Jur.2d, *Employment Relationship* § 477, at 918 (1996). This is not liability based on *respondeat superior;* the employer still may be held liable for the negligent acts of his or her servant. *Restatement (Second) of Agency* § 213 cmt. a; W. Page Keeton, et al., *Prosser and Keeton on*

*the Law of Torts* § 70, at 501–02 (5th ed. 1984) ("Once it is determined that the man at work is a servant, the master becomes subject to various liability for his torts. He may, of course, be liable on the basis of any negligence of his own in selecting or dealing with the servant, or for the latter's acts which he has authorized or ratified . . . .").

Apparently confident that its intervening cause argument would carry the day, Wal–Mart limited its critique of Plaintiff's common law negligence claims to a statement that they "fail to state legitimate or recognized claims" under Tennessee law. (Def.'s Mem. Supp. Mot. for Summ. J. at 7–8.) This court finds that Plaintiff has stated legitimate causes of action under Tennessee common law. By failing to affirmatively attack Plaintiff's case, Defendant has failed to meet its initial burden under Rule 56(c). *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

#### C. Intervening Cause

■ Defendant argues that Mr. Stone's death is not proximately attributable to the action of the Wal–Mart clerk in selling the bullets to Mr. Cavnor. Based on the theory of superseding and intervening cause, Defendant argues that Mr. Cavnor alone is responsible because he did the actual killing.[3]

■ Tennessee courts follow a three-pronged test for proximate cause: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm complained of; (2) no rule or policy exists to

---

conveyed." Keeton, *supra,* § 104, at 718; *see also Vince v. Wilson,* 151 Vt. 425, 561 A.2d 103, 105 (1989) (noting that the comments to the Restatement support those decisions that extend the rule to sellers). The relationship of the parties is only one factor in determining whether a seller is liable under a negligent entrustment theory. The key factor is foreseeability—"a showing that the entrustor knew or should have

known some reason why entrusting the item to another was foolish or negligent." *Mullins v. Harrell,* 490 So.2d 1338, 1340 (Fla.Dist.Ct.App. 1986). *See* discussion *infra* Part III.C.

**3.** According to Plaintiff, Mr. Cavnor has entered a plea of guilty and been granted a suspended sentence. (Pl.'s Resp. to Def.'s Mot. for Summr. J. ¶ 5.)

relieve the wrongdoer from liability because of the manner in which the negligence resulted in the harm; and (3) the harm giving rise to the action reasonably could have been foreseen or anticipated by a person of ordinary intelligence and prudence. *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991). As to the Defendant's argument that the act of a third party broke the chain of causation,

> [t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result ... An intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability [if] the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm. "An intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonably anticipated."

*Id.* (citations omitted) (quoting *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn.1985)). Proximate cause, which may include an inquiry into a claim that an intervening cause relieved a party of liability, is a jury question "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Id.*

Defendant cites a number of Tennessee rulings that hold that a party who is the antecedent cause of an injury cannot be held liable in the event of an intervening cause. For example, in *Ward v. University of the South*, 209 Tenn. 412, 354 S.W.2d 246 (1962), the state supreme court stated that in cases

> "where two distinct, successive causes, unrelated in operation, to some extent contribute to an injury, it is settled that, where there is an intervening and direct cause, a prior and remote cause cannot be made the basis of recovery of damages, if such prior cause did no more than furnish the condition, or give rise to the occasion, by which the injury was made possible."

*Id.*, 354 S.W.2d at 251 (quoting *Nashville, C. & St. L. Ry. v. Harrell*, 21 Tenn.App. 353, 110 S.W.2d 1032, 1039 (1937)). This is a perfectly accurate statement of the law, but it does not dispense with the need to determine proximate cause by undertaking a foreseeability analysis. As my colleague Judge McCalla noted, " '[i]f the injury was not *reasonably foreseeable*, then the criminal act of the third party would be a superseding, intervening cause of the harm....'" *Lord v. Saratoga Capital Inc.*, 920 F.Supp. 840, 847 (W.D.Tenn.1995) (emphasis added) (quoting *Tedder v. Raskin*, 728 S.W.2d 343, 349 (Tenn. Ct.App.1987)); *see also Richmond v. Adelman*, 1991 WL 134534, at *3 (Tenn.Ct.App. July 24, 1991) ("In order for the intervening act to remove the original wrongdoer's liability it must appear that the negligent intervening act could not have been reasonably anticipated.").

In the present case, questions of fact exist both as to negligence and proximate cause that should be submitted to a jury. Accordingly, summary judgment is inappropriate, and Defendant's motion is **DENIED**.