ROWAN *v.* SAULS.

ROWAN *v.* CONDER.

(*Jackson*, April Term, 1953)

Opinion filed July 17, 1953.

Rehearing denied October 9, 1953.

GEORGE A. McCORMICK and JOSEPH C. RUTSCHMAN, JR., both of Memphis, for plaintiff.

CHARLES L. NEELY and O. W. WELLS, both of Memphis, for defendants.

574

Mr. Justice Prewitt delivered the opinion of the Court.

This is a suit resulting from an automobile collision by a Ford car driven by the defendant Flak and a truck, on a four lane highway just east of the city limits of Memphis.

There is no point in stating the facts as to how the accident occurred, or going into the question of negligence of Flak, because that negligence was settled by the verdict of the jury. Verdicts and judgments thereon were entered against Henry Flak and William Albert Rowan in the sum of $7,500 in each case.

The Court of Appeals affirmed the judgment as to William Albert Rowan on the ground that there was substantial evidence to support the verdict based upon the theory that the jury might have inferred from the testimony that William Albert Rowan was negligent in entrusting the automobile to Henry Flak under the existing circumstances.

A brief statement of the facts leading up to the collision will present the question we are called upon to decide.

Mr. Bryant Hawks of Fort Worth, Texas, was getting up a party of young people to visit his summer home at Cashiers, N. C. Miss Mary Jo Armstrong, Henry Flak, Dennis Williams and James Avery were all to go and they asked William Albert Rowan to go with them. All the expenses of the trip were to be borne by Mr. Hawks and Mr. Hawks placed Henry Flak in charge of the trip and gave him the money for the purpose of paying the expenses. Rowan and Williams were in the Ford automobile going from Fort Worth to Memphis and Miss Armstrong, Flak and Avery were all in the other car. When they reached Memphis, they spent the night, and the next morning William Albert Rowan went in the car with Miss Armstrong and Dennis Williams and James Avery and Henry Flak went in the Ford with Avery driving. After they had bought gasoline at a station which was only a short distance from the city limits, Miss Armstrong, Rowan and Williams proceeded in Miss Armstrong's car, and at the time they left, Avery was at the driver's seat, he having driven from the hotel in Memphis to the filling station. After their departure, Avery, who was a licensed driver, asked Flak if he wanted to drive and Flak then got behind the wheel and the accident occurred.

Proof showed that Flak had not been in the United States very long, he being a young man twenty-four years of age, very bright, and going to Southwestern University in Texas. He had been a friend of the Hawks boy who had been accidentally killed. Flak had been licensed to drive a car by the State of Texas, having stood his examination and having qualified as such the

license from the state merely providing that for a period of six months some experienced driver should be in the car with him when he was driving and, at the expiration of that time, there was no longer that provision in his license. William Albert Rowan did not know there was any limitation at all in Flak's license until after the accident. He knew that Flak had not had a great deal of experience in driving in this country but knew he had a driver's license and thought he was competent, having had experience in driving in Europe.

Flak testified as follows:

"Q. Didn't you have at the time of this accident a limited driver's license? A. Yes, I had. There was a restriction that a licensed driver has to be in front seat.

"Q. You had a limited driver's license? A. Restricted. * * *

"Q. Why was it restricted? A. I think * * * I don't know the legal procedure. I think if you want to get your European license transferred to American license they will give you about three months probation as you said. It doesn't matter how good you are or how bad you are, they give you probation and then you can apply for another after you get acquainted with the country and the highways."

This witness further testified that he had been in this country nine months, that he did not own an automobile but he had one consigned to him in his duties as an officer in Poland and did considerable driving there before coming to the United States.

The Court of Appeals based its inference from the testimony of young Rowan that while Rowan told Avery, the experienced driver, to drive the Ford on leaving Memphis, yet Rowan admitted that he expected Flak to do some of the driving on the remainder of the journey.

It might be observed here that there is no evidence here that any of the parties had partaken of beverages of any sort, nor is there any evidence of any negligent driving on the part of Flak at any time before the accident in question.

Referring again to Flak's testimony, we quote as follows:

"Q. How much experience have you had in driving automobiles in this country since you have been here less than two years ago? A. Very little. I drove in New York about a few times in some friends' car.

"Q. A few times? You mean a half dozen times? A. Six or seven times, very short distances.

"Q. What other driving have you done? A. I drove a car at school a couple of times of my friends at the University, and while I was working in Odessa, Texas, during the summer I drove about twice, I think local driving.

"Q. All told, up until you drove the car in this wreck, you had driven, maybe possibly, a dozen times? A. Yes, that is true. * * *

"Q. Now, Mr. Flak, you are not familiar with the traffic rules that we have over in this country, they are somewhat different? A. There is very little difference. Curve signs are the same, stop signs, etc.

"Q. I believe you testified you did very little driving over there, even in Poland, isn't that correct? A. But I knew the rules.

"Q. Did you know the rules here? A. Yes, sir."

This brings us to the quite difficult question to be decided in this case—that is, whether young Rowan was guilty of negligence in permitting Flak, either expressly, or impliedly, the right to drive his car.

The plaintiffs rely on *Nicholson Construction Company* v. *Lane,* 177 Tenn. 440, 150 S. W. (2d) 1069. However,

in this case the proof showed clearly that Johnson, who operated the car, was addicted to drink. The superintendent of the company testified that Johnson would get drunk at night and was repeatedly late for work the next morning, and that he had twice reprimanded Johnson about his drinking.

Another case relied on by the plaintiffs is *Reid* v. *Messer*, 33 Tenn. App. 255, 231 S. W. (2d) 400. Again, in that case, it appeared that Reid, the bailee of the car from his mother, and Kaisi went out on a lark and had several drinks of whiskey each. Then Reid loaned the car to Kaisi, with whom he had been drinking, to go after some more whiskey. It was on this mission that the collision took place.

The general rule is that one who turns his automobile over to one under the influence of an intoxicant, or to one addicted to the use of intoxicants to excess, or to a driver who is known to the party loaning the car to be a reckless or negligent or otherwise incompetent driver, is charged with negligence.

We have no such case here. There is no proof in the record indicating that Flak was a careless or negligent driver, or under the influence of an intoxicant. He had driven friends' cars in New York on several occasions, and also had driven the automobiles of other friends while at Southwestern University in Texas. The record shows that he was a young man of high mentality and Mr. Hawks, who financed the trip, turned the expense money over to Flak. It does not seem reasonable that young Rowan would have permitted Flak to drive his car had he known that he was an incompetent driver, and it does not strike us with any force that Avery, who held a commercial driver's license, would have turned the car over to Flak if he had known that the latter was an

incompetent driver. It is a well known fact that momentary forgetfulness or detraction from the road ahead oftentimes causes collisions and wrecks, and this often happens to drivers of long experience.

William Rowan was eighteen years of age and Flak was twenty-four years of age and a man of high mentality, and no doubt trustworthy. While the proof shows that he had not operated an automobile to any great extent in this country, his age, personal experience and mental capabilities and the possession of a driver's license justified young Rowan in consenting that he drive the car. Young Rowan did not know that the driver's license was restricted. However, it does appear that this six months' restriction had practically elapsed when the accident occurred. The plaintiffs offered no evidence to show that Flak was incompetent. The restriction in Flak's license was not due to any lack of experience or physical or mental disability but due entirely to his being an immigrant.

■ When the State of Texas licensed Flak to drive an automobile, it, in effect, issued to him a certificate, evidence of the fact that he had demonstrated his ability to operate an automobile. This was held in the case of *Owens* v. *Carmichael's U-Drive-Autos,* 116 Cal. App. 348, 2 P. (2d) 580, 581, in which case the driver of the car had been issued a student's permit to drive an automobile with another licensed driver. In holding that the bailor was not negligent in permitting the one so licensed to drive an automobile, the court said:

"* * * an operator's license is no longer merely a means of identification, but is in fact, a certificate certifying the fact that the holder had demonstrated his competency."

In *Brown* v. *Fields,* 160 Or. 23, 83 P. (2d) 144, where a dealer turned a demonstrator over to a young man in possession of an operator's and chauffeur's license, it was held that the possession of either was prima facie evidence of his competency to drive an automobile, and where there was no evidence to show that he was physically or mentally incapacitated, or there was no evidence of intoxication, there was no evidence to support the verdict of the jury. See *Piquet* v. *Wazelle,* 288 Pa. 463, 136 A. 787.

In the case of *Tanis* v. *Eding,* 280 Mich. 440, 273 N. W. 761, it was held that it was necessary to prove that the employee was incompetent, careless or reckless, and that the employer knew it. See *Kenyon* v. *Hathaway,* 274 Mass. 47, 174 N. E. 463, 73 A. L. R. 156; 36 A. L. R. note on p. 1137; 168 A. L. R. note on p. 1364. See also *Saunders Drive it Yourself Co.* v. *Walker,* 215 Ky. 267, 284 S. W. 1088.

 It results that we find no evidence of negligence on the part of young Rowan and the verdicts of the lower courts are reversed and the suit dismissed as to Rowan.