J. E. BROWN, Plaintiff in Error, v. JAMES DON HAR-
KLEROAD, GARLAND HARKLEROAD and MISS
RUBY JONES, Defendants in Error.—287 S. W. (2d) 92.

Eastern Section. November 8, 1955.

Petition for Certiorari denied by Supreme Court, February 3, 1956.

John R. Tood, of Kingsport, for plaintiff in error.

Wilson & Worley and Wm. T. Gamble, all of Kingsport, for defendants in error.

HALE, J. J. E. Brown prosecutes this appeal from judgments rendered against him for the tortious acts of his adult son, James Albert Brown. The suits grew out of a collision between an automobile owned by Garland Harkleroad, occupied by James Don Harkleroad and Miss Ruby Jones, and an automobile driven by James Albert Brown, which had been given to him by his father, the said J. E. Brown. Separate suits were instituted by the Harkleroads and Miss Jones against the Browns. They were consolidated for trial, which resulted in verdicts for the named plaintiffs aggregating the sum of $16,425.

J. E. Brown, the father, moved for a new trial, insisting, inter alia, that his motion for a directed verdict at the close of all the proof should have been sustained. His motion was denied, resulting in this appeal in the nature of a writ of error. James Albert Brown did not appeal.

The theory of the plaintiffs was:

(1) That the father, J. E. Brown, was negligent in purchasing this automobile for use by a known habitually reckless and drunken driver, independent of the technical question of ownership; and

(2) That registration is not conclusive of ownership, that registration in the name of the son was merely a

fraudulent scheme to shield the father from liability, and that ownership and control was in the father, who was negligent to allow his son to drive said automobile.

J. E. Brown's plea was that he was not guilty; that he did not own or furnish the automobile in question for the benefit of his family or the defendant James Albert Brown; and that said son, an adult, was the owner of such automobile and was not on any mission or business for him; that he, J. E. Brown, had no right to direct or control his son in the operation thereof and that the son was not his agent in its operation.

On June 22, 1954, James Albert Brown, age 26, returned to his home in Greene County from two years' service in the army, where he was doing a second hitch. On that date he went with his father to Kingsport and purchased from the Craft Motor Company a used Ford automobile for $807.84. The invoice was made to James A. Brown and on the same day he obtained license plates in the same name and applied for a certificate of title, which was issued by the Tennessee Department of Finance & Taxation on July 19, 1954, to James A. Brown, shown to be the same as James Albert Brown. This certificate showed the title in him and that there were no liens.

He testified that he paid for this automobile out of savings he sent his father while in service, $700, plus the remainder paid by him in cash.

The evidence for the plaintiff is that J. E. Brown stated that he bought the automobile for his son, saying, "I went and bought it and paid the cash for it out of my pocket." To others he said that he had paid for it; that it belonged to his son.

J. E. Brown did not testify in his own behalf. Therefore, under the well-known rule applicable to jury

verdicts, we shall take it that. the father bought this automobile for his son and paid the cash for it out of his own pocket.

The accident occurred on October 16, 1954, or a little less than four months after its purchase, and under such circumstances that warranted the jury in finding James Albert Brown was guilty of reckless and drunken driving.

The evidence also shows that sometime prior to the entry of James Albert Brown into the army in 1952 he had wrecked two or three motor vehicles for his father, who had paid out about $12,000 by reason thereof; that in 1952 his driver's license was revoked; that in March, 1948 he was arrested for driving drunk, although not convicted thereof; and that his father had talked to him about his having wrecks and drinking, but there is no evidence that he habitually drove while drinking unless it be inferred from the fact that he was drinking at the time of the wreck in question. It is also shown that Mr. J. E. Brown's insurance carrier refused further coverage on his personal car unless he submitted an affidavit that he would not permit James Albert Brown to drive it.

Beyond any doubt, at least up until 1952, James Albert Brown had the reputation of being an incompetent and reckless driver, and this should have been known to his father. There were no incidents involving this automobile from the time it was purchased until the accident in question. So that, adding the time in the army to the four months from June to October, we have about 28 months of accident-free behavior.

Is the father liable as he would have been in the case of the bailment of his automobile to a known reckless driver addicted to drink? On this question of bailment see Nicholson Const. Co. v. Lane, 177 Tenn. 440, 150, S. W. (2d) 1069; English v. Stevens, 35 Tenn. App.

557, 249 S. W. (2d) 908; Rowan v. Sauls, 195 Tenn. 573, 260 S. W. (2d) 880; and also annotation to 168 A. L. R. 1356.

The great weight of authority—although not numerous—is to the contrary. In Blashfield's Automobile Law, Vol. 5A, Section 3096, it is said:

"The father of an adult son to whom he has given an automobile for his own individual use is not liable for an injury inflicted by the son in its negligent operation, though he gave the automobile with the knowledge that the son was an incompetent driver and sometimes drank in the absence of any allegation to bring into application the doctrine of respondeat superior or the maxim qui facit per alium facit per se."

The strongest cases supporting this text are Shipp v. Davis, 25 Ala. App. 104, 141 So. 366, and Estes v. Gibson, Ky., 257 S. W. (2d) 604, 605, 36 A. L. R. (2d) 729. In the latter case it was said:

"The legal principle relied upon by the appellant is thus stated in Restatement of the Law of Torts, Volume 2, Sec. 390:

" 'One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.'

"Comment b. notes the analogy to as well as the distinction between this and Sec. 307, which deals with the use of an instrumentality which is known

or should be known to be dangerously improper for the use to which it is put, while this Sec. 390 deals with supplying a chattel to a person incompetent to use it safely, irrespective of whether the chattel is to be used for the supplier's purposes or for the purpose of him to whom it is supplied. It is further noted that in either case 'the actor may not assume that human beings will conduct themselves properly if the facts which are known or should be known to him should make him realize that they are unlikely to do so.' And in Comment c. it is stated that if 'the person to whom the chattel is supplied is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions, the supplier may be liable for harm suffered by him, as when a loaded gun is entrusted to a child of tender years.' However, the various explanatory illustrations show the broad and abstract statement of the rule has its limitations. The illustrations are confined to cases of agency and bailment, as by permitting the use of, lending or hiring an automobile or other potential or inherently dangerous instrumentality.''

Then in discussing Shipp v. Davis, supra, it was said:

''Closest in point of fact and of law is Shipp v. Davis, 25 Ala. App. 104, 141 So. 366, 367. A father bought an automobile and gave it to his son, who was over twenty-one years old, knowing at the time that his son used intoxicating liquors to excess. It was sought to hold the father liable for damages resulting from the son's negligence in operating the car. The court held there was no liability on the part of the father. Its pertinence justifies extended quotation from the opinion.

" 'In the absence of an allegation of relationship constituting a legal control of Jack Shipp by Dr. M. G. Shipp, so as to bring into action the doctrine of respondeat superior or the maxim qui facit per alium facit per se at the time of the accident, Jack Shipp would be liable for his own personal negligence which is the proximate cause of an injury, but the liability would not extend and attach to Dr. M. G. Shipp, who gave him the automobile with a knowledge at the time of the gift that Jack was an incompetent driver, and although he might have known, at the time of the accident complained of, that Jack was still incompetent as a driver. 45 Corpus Juris, 877 (309) A; 42 C. J. 1075, note 26. As was held in Gardiner v. Solomon, 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380, and in many other cases in this and other states (42 C. J. 614, note 95), automobiles are not classed with dangerous instrumentalities, and, while in the hands of an incompetent driver an automobile may become a dangerous machine and a menace to others, if it should be held that an automobile could not, without assuming liability for negligent or incompetent driving, be sold or given to a person not having sufficient knowledge or training to drive the car, it would be carrying the doctrine of concurrent liability far beyond any decision coming to our knowledge. Whether by a gift or a sale when an automobile is placed in the possession and control of a person, sui juris, such transfer passes the title to the buyer or donee, and thereafter responsibility for its operation rests with such buyer or donee. If, however, at the time of delivery of possession and control, the receiving party was by reason of intoxication or other cause incapacitated

from driving the machine with reasonable safety to the public, a different rule would apply.'

"This seems to us to be a reasonable conclusion."

However, Estes v. Gibson was a four-three decision. The minority, speaking through Duncan, J., said:

"The majority opinion erroneously assumes that liability is dependent upon some legal relationship, such as agency or bailment. The authorities make it clear that liability in such instances does not rest upon the fact of ownership but upon the combined negligence of the owner in entrusting the machine to an incompetent and reckless driver and of the driver in its operation.

"I am unable to discern a reasonable basis for distinction in the negligence of one who lends his car and one who gives a car to a known incompetent or reckless driver. If there is a distinction, the more reasonable view would suggest that one who gives an automobile to a known incompetent driver, placing in him the power to use it at any and all times, drunk or sober, sane or insane, is more negligent than one who merely lends the vehicle for one specific occasion."

In Bugle v. McMahon, Sup., 35 N. Y. S. (2d) 193, it was held that a gift of an automobile by a parent to a drinking son would render the parent liable for its negligent operation. But this was reversed by the Appellate Division in 265 App. Div. 830, 37 N. Y. S. (2d) 540, 541, which held that the allegation "that the appellant gave the automobile, or the funds out of which it was purchased, to the other defendant, is consistent with liability and non-liability."

But in Golembe v. Blumberg, 262 App. Div. 759, 27 N. Y. S. (2d) 692, it was held that a father who gave an

epileptic son an automobile was liable for injuries to passengers when the son, when in an epileptic fit, ran into a tree and injured the passengers. This holding is difficult to reconcile with the Bugle case just before mentioned and which seems to be the latest utterance in that jurisdiction.

If a father incurs liability by giving an automobile to his son, knowing him to be drunken or incompetent driver, when would it end? Would it last for the life of the automobile? Would it apply to a new automobile in the event of a trade-in? Or would liability attach to a dealer who sold an automobile to a known incompetent or drunken driver? Or to a filling station operator who sold such a person gas, knowing of his propensity?

The legislature has not seen fit to impose any such liability. We think it would be judicial legislation if we undertook to go past that now recognized by existing holdings. The very paucity of authorities on this interesting question leads to the belief that such liabilty is not recognized in other jurisdictions.

■ At the beginning of the trial Judge Ferguson intimated that he doubted if there was liability on this theory but later decided he would let both theories, as previously mentioned, be developed in proof.

As we understand the charge it was bottomed solely upon the second theory, namely, ownership by J. E. Brown of the automobile in question. It reads:

"The plaintiffs also insist that they are entitled to recover against the defendant J. E. Brown, the father of said James Albert Brown, and in that connection I charge you that it is the law in this state that an owner who entrusts his automobile to an individual addicted to habits of intoxication which were known to said owner or should have been

known to him, by the exercise of due care, is liable for damages caused by such individual becoming intoxicated and operating the automobile negligently while in that condition.

"Incompetence, recklessness, and accident are so universally sequel of drinking that an owner of an automobile is put on notice of what is likely to occur if he does not take active steps to prevent anyone addicted to drinking from driving it. If he fails in the performance of this duty, he should suffer the consequences of his neglect.

"So that, Gentlemen of the Jury, if you find in favor of the plaintiffs and against the defendant James Albert Brown, and you further find by a preponderance of the evidence that the defendant J. E. Brown was the true owner of the car and that he placed the car in the hands of his co-defendant, James Albert Brown is a son, to use and drive on the public highways, knowing him to be a drunk and incompetent driver, and thus gave the car to his co-defendant, James Albert Brown, and that on this occasion the defendant James Albert Brown was driving it in a drunken and negligent condition, as complained of, and that that was the direct and proximate cause of the plaintiffs' injuries, your verdict would also be in favor of the plaintiffs and against the defendant J. E. Brown."

No further requests were submitted.

We are unable to find any evidence to support this second theory of ownership; that the registration of this automobile in the name of James Alfred Brown was merely a scheme on the part of the father to shield himself from liability for his son's acts. It is shown that on the morning after the accident the son asked his father

"to go down and get the papers out of the car, the glove compartment of the car" the witness saying "they were interested in getting the papers before the police." What these "papers" were is not shown. Able counsel for the plaintiff below argues that they concerned ownership of the automobile, possibly muniments of title; that this when coupled with the failure of J. E. Brown to testify authorized the jury to find that he was the true owner of such automobile, thus establishing the status of a bailor, with resulting liability, under the authority of the Nicholson case and others hereinbefore mentioned.

It seems to us that it would be sheer conjecture to say that "the papers" in the automobile vested some sort of title in J. E. Brown. Standing alone the statement means nothing. When fortified by the presumption arising from failure to testify we still have nothing, as two nothings do not make one something.

We are constrained to hold that J. E. Brown is not liable under either theory submitted by plaintiffs, and therefore that his motion for a directed verdict should have been sustained.

This conclusion makes it unnecessary to pass upon other matters submitted by the assignments of error.

Judgment against J. E. Brown is reversed. Cost incident to the appeal will be taxed to plaintiffs below.

McAmis, P. J., and Howard, J., concur.