# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 14, 2004 Session

## GARY L. WEST, ET AL. v. EAST TENNESSEE PIONEER OIL CO., d/b/a EXXON CONVENIENCE STORE

**Appeal from the Circuit Court for Knox County**
**No. 2-390-01     Harold Wimberly, Judge**

---

### No. E2002-03039-COA-R3-CV - FILED JULY 19, 2004

---

Gary L. West and Michell B. Richardson ("Plaintiffs") sued East Tennessee Pioneer Oil Co., d/b/a Exxon Convenience Store ("Defendant") asserting claims based on negligence, negligent entrustment, and negligence *per se*. Plaintiffs allege that Brian Lee Tarver ("Tarver") was visibly intoxicated when he stopped at Defendant's store to purchase beer and gasoline. Pursuant to company policy, Defendant's employees refused to sell Tarver beer because he was intoxicated, but did sell him $3.00 of gasoline. One or more of Defendant's employee then assisted Tarver with operating the gasoline pump. Shortly after leaving Defendant's store, Tarver was involved in an automobile accident resulting in serious personal injuries to Plaintiffs. Plaintiffs offered expert proof that had Tarver not obtained the $3.00 worth of additional gasoline, he would have run out of gas before reaching the accident site. The Trial Court granted Defendant's motion for summary judgment on all three of Plaintiffs' claims. We affirm the grant of summary judgment on Plaintiffs' claims for negligent entrustment and negligence *per se*. We reverse the grant of summary judgment on Plaintiffs' negligence claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

Gregory F. Coleman and Michael A. Myers, Knoxville, Tennessee, for the Appellants Gary L. West and Michell B. Richardson.

Clint J. Woodfin and Gary T. Dupler, Knoxville, Tennessee, for the Appellee East Tennessee Pioneer Oil Co., d/b/a Exxon Convenience Store.

# OPINION

## Background

Plaintiffs sued Defendant for personal injuries arising from an automobile accident which occurred on July 22, 2000, in Knox County.[1] In the Complaint, Plaintiffs allege that Tarver was about to run out of gasoline when he arrived at Defendant's Exxon Convenience Store. Plaintiffs claim that when Tarver arrived at the store, he was visibly intoxicated and had difficulty walking. Tarver attempted to purchase beer, but Defendant's employees refused to sell him any beer in accordance with Defendant's policy prohibiting the sale of beer to intoxicated customers. According to Plaintiffs, Tarver then purchased $3.00 of gasoline and proceeded to the gasoline pumps. Tarver allegedly was so intoxicated that one of Defendant's employees had to assist him in getting to the pumps. Plaintiffs then claim that "in his intoxicated state, Tarver was unable to operate the gasoline pump on his own. The Defendant's employee intervened and proceeded to assist Tarver in pumping the gasoline into his vehicle." After assisting Tarver, this employee allegedly watched as Tarver drove away, heading the wrong way on Highway 11 with his headlights off. Plaintiffs claim that none of Defendant's employees attempted to contact law enforcement personnel to apprise them that Tarver was driving while intoxicated. A few minutes after Tarver left Defendant's premises, he "crashed head-on into Plaintiffs' automobile" causing serious personal injuries to both Plaintiffs. Based on Requests to Admit filed by Plaintiffs with regard to medical expenses they claim were causally related to the automobile accident, by September of 2002, Michell Richardson had incurred medical expenses totaling $16,286.41, and Gary West had incurred medical expenses totaling $190,905.83.

In their Complaint, Plaintiffs claimed that the actions of Defendant's employees in selling Tarver the gasoline and in actively assisting an obviously intoxicated driver, Tarver, in obtaining gasoline constituted negligence and that it was reasonably foreseeable that these actions would result in a motor vehicle accident. Plaintiffs also claimed that these actions constituted negligent entrustment. Plaintiffs further alleged that Defendant was negligent by not properly training its employees and establishing safety procedures with regard to selling gasoline to intoxicated drivers. Finally, Plaintiffs claimed Defendant was guilty of negligence *per se* by violating Tenn. Code Ann. §§ 55-10-201 and 202. Plaintiff Michell Richardson sought compensatory damages of $1,000,000, and Plaintiff Gary West sought compensatory damages of $2,000,000. Plaintiffs demanded a jury.

Defendant filed an Answer to the Complaint, essentially denying the pertinent allegations contained therein. Defendant denied any liability to Plaintiffs and further claimed that Tarver's negligence was the proximate cause of Plaintiffs' injuries.

---

[1] Plaintiffs also sued Exxon Mobile Corporation and F.H. Shoemaker Distributors, Inc., but later voluntarily dismissed these two defendants without prejudice.

Defendant filed a Motion for Summary Judgment and attached deposition testimony from several of its employees. Relying on this deposition testimony in its Statement of Undisputed Facts accompanying the motion, Defendant claimed its employee, Dorothy Thomas ("Thomas"), refused to sell Tarver any beer, but that she did sell him $3.00 of gasoline. Defendant further claimed that Tarver *may* have been under the influence of alcohol. Defendant also claimed it was undisputed that off-duty employees Candice Drinnon ("Drinnon") and Roy Anrani ("Anrani") assisted Tarver in operating the gas pump "by pushing a button on the pump." While Drinnon smelled alcohol on Tarver's breath, she was not aware he possibly was intoxicated until after she assisted him with the gas pump. Defendant further claimed that due to the number of customer's in Defendant's store at the relevant time, Thomas did not see Tarver pumping gas or the assistance provided by Drinnon and Anrani. Finally, Defendant claimed Thomas was unaware that Tarver was driving and thought he was accompanied by at least one other person. Based on these allegedly undisputed facts, Defendant claimed it owed no duty to Plaintiffs and was entitled to summary judgment as a matter of law on Plaintiffs' claims of negligence, negligent entrustment, and negligence *per se*.

Plaintiffs responded to Defendant's Motion for Summary Judgment and Statement of Undisputed Facts. Plaintiffs took issue with Defendant's characterization of Tarver's physical condition. Plaintiffs attached testimony from Thomas who described Tarver as "drunk," "staggering," and "wasted." Plaintiffs also claimed that Drinnon was aware of Tarver's intoxicated condition prior to assisting him at the gas pump. With regard to Defendant's claim that Thomas thought Tarver had someone else with him to drive, Plaintiff attached deposition testimony from Thomas as well as portions of a recorded statement wherein she stated:

> "I was just ringing people up so fast I was lucky to have time to look up to see who I was waiting on."

> "[W]e don't know how he drove through there and didn't hit any [of the cars in the parking lot]. But, he obviously in the back of his mind knew he needed gas because he pulled up to the pump."

> "I looked to see if somebody was driving the car. Because I don't know how he got through that maze of cars and pulled right up to the pump."

Plaintiffs set forth additional facts which they claimed were undisputed. Specifically, Plaintiffs claimed that Thomas asked Drinnon to assist Tarver in operating the gas pump. Plaintiffs also attached the expert affidavit of Dr. Jeffrey H. Hodgson ("Hodgson"), a Professor Emeritus of Mechanical Engineering at the University of Tennessee. Hodgson stated that when Tarver arrived at Defendant's store, Tarver had enough gasoline in his vehicle to travel approximately only 1.82 miles, and the automobile accident occurred 2.8 miles from Defendant's store. Thus, based on Hodgson's affidavit, Plaintiffs claimed that "had Tarver not stopped at the Exxon station and

purchased fuel, his car would have 'run out' of gasoline approximately one (1) mile before reaching the accident scene."

The Trial Court granted Defendant's Motion for Summary Judgment. The Trial Court concluded that due to the peculiar facts of this case, Plaintiffs' various claims for relief were not recognized under Tennessee law "as it stands right now." Plaintiffs appeal the grant of summary judgment to Defendant, claiming that all three of their claims, i.e., negligence, negligent entrustment, and negligence *per se*, are cognizable under Tennessee law when considering the relevant facts, and the Trial Court, therefore, erred in granting Defendant's Motion for Summary Judgment.

## Discussion

In *Blair v. West Town Mall*, our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). In *Blair*, the Court stated:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples*, 15 S.W.3d at 88.

> * * *

> When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a

-4-

claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair*, 130 S.W.3d at 763-64, 767 (quoting, in part, *Staples*, 15 S.W.3d at 88-89) (citations omitted)).

Our Supreme Court also has provided instruction regarding assessing the evidence when dealing with a motion for summary judgment, stating:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

The facts in the present case, when viewed in the light most favorable to Plaintiffs, are as follows: (1) Tarver was visibly intoxicated when he arrived at Defendant's store; (2) Tarver was so intoxicated that Thomas, in accordance with Defendant's policy, refused to sell him beer; (3) Tarver nevertheless was sold $3.00 of gasoline; (4) Tarver was too intoxicated to pump the gasoline without assistance; (5) Defendant's employees affirmatively assisted Tarver with pumping the gasoline; and (6) had Tarver not obtained the additional $3.00 of gasoline, he would have run out of gas approximately one mile before reaching the accident site where he hit Plaintiffs' vehicle head-on.

Before we discuss whether any of Plaintiffs' three claims are cognizable under Tennessee law, we first emphasize what the issues before us *do not* involve. Specifically, and given the record before us at this summary judgment stage, this case does not involve the issue of whether a store can be held liable to third parties for negligence solely because it sold gasoline to a visibly intoxicated driver who later was involved in an automobile accident, and we express no opinion on that particular issue. Instead, as relevant to Plaintiffs' negligence claim, this case involves potential liability of a store owner for selling gasoline to an obviously intoxicated driver coupled with two other important facts: (1) store employees affirmatively assisting the intoxicated driver with pumping

the gasoline *and* (2) evidence that had this additional gasoline not been obtained, the intoxicated driver would have run out of gas before reaching the site of the accident.

We first will address Plaintiffs' claim that the Trial Court erred in dismissing their negligence claim. In Tennessee, in order to prevail on a negligence claim, a plaintiff must establish the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001)(quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

Defendant's primary argument on appeal is that it owed no duty to Plaintiffs, or any other third party for that matter. The issue of whether one person owes a duty to another is a question of law to be decided by the court. *Lett*, 60 S.W.3d at 99. The *Lett* Court discussed the duty of care in a negligence case as follows:

> To establish duty, a plaintiff must show that there exists a "legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." [*McCall v. Wilder*, 913 S.W.2d at 153]. A risk of harm is unreasonable "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* In making this determination, several factors are important: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; and (5) the feasibility, relative usefulness, relative safety, and relative costs and burdens, of an alternative, safer course of conduct. *Id.*

*Lett*, 60 S.W.3d at 99.[2]

The facts in *Lett* involved a Waffle House employee, Lynda Mills, who reported to work intoxicated and thereafter clocked in. The employer attempted without success to sober Mills up so she could work. The manager then instructed the assistant manager to clock Mills out. After Mills refused an offer of a ride home and drove herself, she was involved in an automobile accident resulting in serious personal injuries to the plaintiff. *Lett*, 60 S.W.3d at 97. The plaintiff sued Mills' employer claiming it had a duty to plaintiff to prevent Mills from leaving work and driving home intoxicated. The trial court disagreed and granted the employer's motion for summary judgment. *Id.*

---

[2]An application for permission to appeal was denied by the Tennessee Supreme Court in *Lett*, and the Supreme Court recommended publication of this Court's opinion.

On appeal, this Court rejected the plaintiff's assertion that the employer had a duty to prevent Mills from driving while intoxicated. In so doing, we noted that, as a general rule, a person does not have a duty to control the conduct of another so as to prevent that person from injuring a third party. *Id.* at 99. A notable exception to this rule is when the defendant stands in a special relationship either to the individual whose conduct threatens to cause harm, or to the individual exposed to that harm. *Id.* The *Lett* Court observed that pursuant to the Restatement (Second) of Torts § 315(a), there is no duty to control the conduct of a third person so as to prevent him from doing harm to another unless "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Lett*, 60 S.W.3d at 99, 100 (quoting Restatement (Second) of Torts § 315 (1965)).[3] Tennessee Courts have not found a "special relation" as that term is used in § 315(a) unless the defendant had the means and ability to control the conduct of the third party. *Id.* at 100.

Finding no Tennessee authority addressing whether an employer-employee relationship constituted a "special relation" for purposes of §315(a) of the Restatement, the Court in *Lett* discussed relevant authority from other jurisdictions addressing this issue, in particular *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983). In *Otis*, an employee consumed alcoholic beverages in his car while on a dinner break and, upon his returning to work, it was suggested that the employee go home. The employee was escorted to his car by his supervisor at which time the supervisor inquired whether the employee could make it home. The employee responded that he could. Shortly thereafter, the employee was involved in an automobile accident, killing the plaintiff's decedent. *Otis*, 668 S.W.2d at 308.

A sharply divided Texas Supreme Court reversed a grant of summary judgment to the employer. In so doing, the *Otis* Court discussed several cases where a defendant's affirmative acts ultimately prevented the granting of summary judgment or dismissal of the lawsuit. For example, in *Leppke v. Segura*, 632 P.2d 1057 (Colo. Ct. App. 1981), the Colorado Court of Appeals reversed a grant of summary judgment to the defendant tavern owner, stating that "by jump-starting an automobile for an obviously drunken driver, thus giving him mobility which otherwise he would not have had, one or both of the defendants set into motion a force involving an unreasonable risk of harm to others." *Id.* at 1059. The *Leppke* Court distinguished the facts then before it from situations involving liability predicated solely upon a failure to stop an individual who was already engaged in dangerous behavior. *Id. See also Brockett v. Kitchen Boyd Motor Co.*, 70 Cal. Rptr. 136, 139 (1968) (the special relationship of employer and employee coupled with the affirmative acts of the employer which involved guiding the intoxicated employee to his vehicle, placing the employee into his vehicle, and directing him to drive home were sufficient to impose a duty of reasonable care on the employer.).

A five member majority of the Texas Supreme Court relied on *Leppke*, *Brockett* and similar cases involving affirmative acts of an employer when holding that "when, because of an

---

[3] The *Lett* Court noted that the Restatement (Second) of Torts § 315 has been adopted in Tennessee. *Lett*, 60 S.W.3d at 99 (citing *Newton v. Tinsley*, 970 S.W.2d 490, 492 (Tenn. Ct. App. 1997)).

employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Otis*, 668 S.W.2d at 311. The majority in *Otis* then reversed the grant of summary judgment and remanded the case for a trial on whether the employer acted in a reasonable and prudent manner. *Id*.

Four Justices dissented from the majority opinion in *Otis*. The dissent concluded that the employer had not taken any affirmative steps and its only act was a failure to take charge of its employee and prevent him from driving home. The dissent further concluded that there must be a custodial relationship in which the person charged with controlling the conduct of another voluntarily assumes responsibility for that person. *Id.* at 313 (McGee, dissenting). The dissent concluded that the grant of summary judgment to the employer should be affirmed because, as a matter of law, the employer did not voluntarily take the employee into its custody or assume responsibility for his conduct. *Id*.

After discussing the differing views of the Texas Supreme Court in *Otis*, this Court in *Lett* concluded as follows:

> We are persuaded by the minority opinion in *Otis*. We find that the facts of the instant case likewise do not present affirmative acts sufficient to impose a duty upon Collis Foods to control the conduct of Mills, who was off-premises and off-duty as well. She arrived at work intoxicated, and Collis Foods did not contribute to, condone, or seek to accommodate, her intoxication. It did not require her to drive home; in fact, it attempted to find her safe passage home, but she refused. In sum, the employer did not provide her mobility she otherwise did not have; it did not encourage her to drive home; and it did not contribute to the condition that made it unsafe for her to drive. In effect, the employer "did no more than acquiesce in [her] determination to drive [her] own car." *Cecil*, 575 S.W.2d at 272.

*Lett*, 60 S.W.3d at 103 (footnote omitted).

In the present case, admittedly there is no employer-employee relationship between Tarver and Defendant. While it may be easier to establish a "special relation" in cases involving an employer and employee, Restatement § 315(a) is not limited to that particular situation. In our opinion, the affirmative acts of Defendant's employees in selling gasoline to and in assisting an obviously intoxicated Tarver with re-fueling his vehicle is similar to the defendant's act in *Leppke* when it jump-started an automobile for an intoxicated driver. In both situations, these affirmative acts "set into motion a force involving an unreasonable risk of harm to others." *See Leppke*, 632 P.2d. at 1059. This is even more apparent when considering that, without Defendant's employees' affirmative assistance which enabled Tarver to obtain more gasoline, he would have run out of gasoline prior to arriving at the accident site. In other words, the acts of Defendant's employees

-8-

provided Tarver with mobility to travel 2.8 miles to the accident site, mobility he otherwise would not have had. Plaintiffs' negligence claim is not predicated on any alleged failure by Defendant to control Tarver, but instead is based on these affirmative acts by Defendant's employees.

In assessing whether a duty is owed, courts must utilize a balancing approach based upon principles of fairness and identify whether the risk to the plaintiff was unreasonable. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). We do not hold that convenience store employees have a duty to physically restrain or otherwise prevent an intoxicated customer from driving away. Neither do we hold that solely the sale of gasoline to a visibly intoxicated driver does or does not create a duty owed by the seller. What we do hold is that the affirmative acts of Defendant's employees gave rise to a duty to act with due care when considering the serious risk created by those acts. Specifically, we believe the affirmative acts of Defendant's employees in both selling the gasoline to and in helping a visibly intoxicated Tarver pump the gasoline into his vehicle created a duty to act with due care. We hold that, under the specific facts of this case, Plaintiffs have at this summary judgment stage set forth a cause of action against Defendant for negligence, and there are genuine issues of material fact regarding whether Defendant breached a duty to Plaintiffs. Accordingly, we reverse the Trial Court's grant of summary judgment on Plaintiffs' negligence claim.

As to Plaintiffs' claim based on negligent entrustment, the four elements of that claim are: (1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another. *Nichols v. Atnip*, 844 S.W.2d 655, 659 (Tenn. Ct. App. 1992).

Defendant argues the tort of negligent entrustment is inapplicable in the present case because there was a sale of gasoline, not an entrustment. Defendant relies heavily on *Brown v. Harkleroad*, 287 S.W.2d 92 (Tenn. Ct. App. 1955). In *Harkleroad*, a father purchased a vehicle for his son, whom the plaintiff claimed was a known drunk and reckless driver. Less than four months later, the son was involved in an accident with the plaintiff and the son later was found guilty of reckless and drunk driving. *Harkleroad*, 287 S.W.2d at 94. The *Harkleroad* Court concluded the father could not be held liable for negligent entrustment because he gave the car to his son, as opposed to loaning it to him. A policy concern given by the *Harkleroad* Court for limiting a negligent entrustment claim to a bailment situation was the following:

> If a father incurs liability by giving an automobile to his son, knowing him to be drunken or incompetent driver, when would it end? Would it last for the life of the automobile? Would it apply to a new automobile in the event of a trade-in? Or would liability attach to a dealer who sold an automobile to a known incompetent or

drunken driver?  Or to a filling station operator who sold such a person gas, knowing of his propensity?

*Harkleroad*, 287 S.W.2d at 96.

Thirty-seven years after *Harkleroad* was decided, this Court in *Nichols v. Atnip*, 844 S.W.2d 655 (Tenn. Ct. App. 1992) declined to address the continuing validity of *Harkleroad*, but did note that *Harkleroad* was contrary to the Restatement (Second) of Torts § 390 "and has been criticized by many courts and legal scholars." *Nichols*, 844 S.W.2d at 660.  Likewise, in *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. 729, 734 n.2 (W.D. Tenn. 1997), the United States District Court for the Western District of Tennessee stated that *Harkleroad* has been "fiercely criticized" and set forth some of the authority which disagreed with that opinion.

By definition, one would think that in order to establish a claim of "negligent entrustment," the entrustor must retain some form of ownership or control over the chattel improperly entrusted.  Black's Law Dictionary 1058 (7ᵗʰ ed. 1999) defines "negligent entrustment" as "[t]he act of leaving a dangerous article (such as a gun or car) with a person who the *lender* knows, or should know, is likely to use it in an unreasonably risky manner." (emphasis added).  It is not, unfortunately, that simple.

On July 31, 2003, the Middle Section of this Court issued its decision in *Rains v. Bend of the River*, 124 S.W.3d 580 (Tenn. Ct. App. 2003).  The Tennessee Supreme Court denied a Rule 11 application for permission to appeal in *Rains* on Nov. 24, 2003.  *Rains* involved, *inter alia*, a negligent entrustment claim against the defendant who sold the plaintiffs' minor son ammunition.  The plaintiffs' son later committed suicide.  The *Rains* Court ultimately concluded that the parents failed to state a claim for negligent entrustment because there was no evidence that the defendant should have suspected the decedent was not competent when he purchased the ammunition, and no evidence that his suicide was reasonably foreseeable.  *Id*. at 597.  However, as pertinent to this appeal, the *Rains* Court concluded that a claim for negligent entrustment can arise from the sale of a chattel, stating:

> While negligent entrustment claims usually arise in the context of a bailment, it is now widely agreed that the merchants may be considered to be suppliers of chattels. *Ireland v. Jefferson County Sheriff's Dep't*, 193 F. Supp.2d 1201, 1229 (D. Colo. 2002); *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. 729, 734 (W.D. Tenn. 1997); *Herndon v. Hughes*, No. 02A01-9706-CV-00128, 1998 WL 90745, at *3 (Tenn. Ct. App. Mar. 4, 1998) (No Tenn. R. App. P. 11 application filed); Restatement (Second) of Torts § 390, cmt. a. Accordingly, state and federal courts have not hesitated to recognize that negligent entrustment claims may be asserted against persons who sell firearms and ammunition. *Morin v. Moore*, 309 F.3d 316 324 (5th Cir. 2002) (assault rifle); *Ireland v. Jefferson County*

-10-

> *Sheriff's Dep't*, 193 F. Supp.2d at 1227-28 (shotgun); *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. at 734 (ammunition); *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. at 1539 (firearms and ammunition); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055, 1064 (2001) (firearms); *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d at 130 (ammunition).

*Rains*, 124 S.W.3d at 597.

Approximately five months after *Rains* was decided, the Western Section of this Court issued its decision in *Concklin v. Holland*, No. W2003-00334-COA-R3-CV, 2003 Tenn. App. LEXIS 934 (Tenn. Ct. App. Dec. 29, 2003), *appl. perm. appeal denied June 1, 2004*. One of the issues in *Concklin* was whether a co-owner of a house could negligently entrust that house to another co-owner. In resolving this issue, the *Concklin* Court stated:

> The Second Restatement of Torts offers a similar definition by stating:
>
>> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.
>
> Restatement (Second) of Torts § 308 (1965). Comment (a) further explains:
>
>> The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.
>
> Restatement (Second) of Torts § 308 cmt. a. (1965). Implicit in these definitions of negligent entrustment is the owner's act of *lending his possession to a third person*. *See* Restatement (Second) of Torts § 308 & cmt. a. (1965). Such an act cannot be accomplished when the thing or activity at issue is being lent to a co-owner rather than a third party.

*Concklin*, 2003 Tenn. App. LEXIS 934, at ** 14, 15 (emphasis added). Thus, the defendant did not have to give consent to a co-owner to occupy the house and could not be deemed to have entrusted the house to a co-owner.[4] *See also Broadwater v. Dorsey*, 688 A.2d 436, 441 (Md. 1996)("[W]e hold that the doctrine of negligent entrustment is generally limited to those situations in which the chattel is under the control of the supplier at the time of the accident. Ordinarily, without the right to permit or prohibit use of the chattel at the time of the accident, an individual cannot be liable for negligent entrustment.").

      *Concklin* certainly seems to support the conclusion reached forty-eight years earlier in *Harkleroad* that a negligent entrustment claim requires some sort of a bailment, which is not the situation when a chattel is sold and all control over that chattel is transferred to the buyer. We acknowledge that there is authority from this Court holding to the contrary. After reviewing the conflicting authorities from this Court as well as other jurisdictions, we respectfully conclude that a bailment relationship rather than a sale of chattel is a prerequisite to establishing the tort of negligent entrustment. We hold that the "sale" of a chattel simply is not an "entrustment" of a chattel. This is not to say that a claim for negligence never can be made against a seller when it sells a chattel to someone whom the seller knows or reasonably should know is likely to use the chattel or conduct himself in such a manner as to create an unreasonable risk of harm to others. Negligence, with all its necessary elements and allocation of comparative fault, rather than negligent entrustment would be the basis for any such claimed liability. As already discussed in this Opinion, that is an issue for another day given the posture of the case now before us. We simply hold that a claim for negligent entrustment cannot be based on an outright sale of the chattel. In light of the foregoing, we affirm the grant of summary judgment to Defendant on Plaintiffs' negligent entrustment claim.

      The final issue involves whether the Trial Court erred in granting Defendant summary judgment on Plaintiffs' negligence *per se* claim. In *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994), our Supreme Court stated:

> The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se. *See McIntyre v. Balentine*, 833 S.W.2d 52, 59 (Tenn. 1992). "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate." *Prosser and Keeton on Torts* § 36, p. 220 (5th ed. 1984). In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992) (citing *Nevill v. City of*

---

[4] The *Concklin* Court also concluded that the negligent entrustment claim must fail because the case involved real property rather than a chattel.

*Tullahoma*, 756 S.W.2d 226 (Tenn. 1988)). It must also be established that the injured party was within the class of persons that the statute was meant to protect. *Smith*, 841 S.W.2d at 831.

*Spinnaker's*, 878 S.W.2d at 937.

In general terms, Tenn. Code Ann. § 55-10-401 prohibits a person from driving an automobile while intoxicated. Tenn. Code Ann. § 55-10-202 makes it unlawful for persons owning or controlling vehicles from requiring or knowingly permitting a driver to operate such vehicle in a manner contrary to law. Tenn. Code Ann. § 55-10-201 provides as follows:

> **55-10-201. Parties to a crime. –** Every person who commits, attempts to commit, conspires to commit, or aids or abets in the commission of any act declared in chapter 8 or parts 1-5 of this chapter to be a crime, whether individually or in connection with one (1) or more other persons, or as a principal, agent or accessory, is guilty of such offense, and every person who falsely, fraudulently, forcibly or willfully induces, causes, coerces, requires, permits or directs another to violate any provision of chapter 8 or parts 1-5 of this chapter is likewise guilty of such offense.

Although not entirely clear, the gist of Plaintiffs' argument appears to be that Defendant's employees aided and abetted Tarver with driving while intoxicated, a violation by Tarver of Tenn. Code Ann. § 55-10-401. Tenn. Code Ann. § 55-10-202 speaks to owners of vehicles or any other person who employs or otherwise has the authority to direct the actions of a driver. Clearly, neither Defendant nor any of its employees had such authority over Tarver.

Our Legislature has not hesitated in establishing guidelines for the sale of alcohol and expressly prohibits the sale of alcohol to intoxicated persons. *See, e.g.*, Tenn. Code Ann. § 57-4-203(c)(1). Since the Legislature has clearly regulated the sale of alcohol to intoxicated persons, we trust it will regulate the sale of gasoline to intoxicated drivers when, and if, it feels the need to do so. We cannot conclude that the sale of gasoline to an intoxicated driver is negligence *per se* under the statutes relied on by Plaintiffs because they do not clearly define the claimed prohibited conduct. In fact, the sale of gasoline is not even mentioned. In the absence of a statute clearly defining what is prohibited, we must affirm the Trial Court's grant of summary judgment on Plaintiffs' claim based on negligence *per se*.

## **Conclusion**

The Judgment of the Trial Court is affirmed in part and reversed in part. This cause is remanded to the Trial Court for further proceedings consistent with this Opinion. Costs on appeal are assessed one-half against the Appellants Gary L. West and Michell B. Richardson and their surety, and one-half against the Appellee East Tennessee Pioneer Oil Co., d/b/a Exxon Convenience Store.

_____
D. MICHAEL SWINEY, JUDGE